AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Northern District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>iPhone, S/N: F17VF8RNJCLY; Samsung cell phone, model SM-J327T1, FCC ID: A3LSMJ327T, IMEI: 354256/09/894643/7; HTC Cricket cell phone, Model ZPYR200, SKU: DHTK4106; iPhone, model A1778 S/N: F4JSK4TEHG7K; Blackberry Curve 9320 cell phone, IMEI:358456055942173 | ) ) ) ) ) ) ) ) ) Case No. 18-mj-141-FHM |

FILED OCT 23 2018 Mark C. McCartt, Clerk U.S. DISTRICT COURT

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment "A":

located in the <u>Northern</u> District of <u>Oklahoma</u>, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 846 and 841(b)(1)(B)(ii)(II) | Conspiracy to Distribute in Excess of 500 Grams or More of Cocaine |

The application is based on these facts:
**See Affidavit of TFO Freddie F. Alaniz, DEA, attached hereto.**

☑ Continued on the attached sheet.
☐ Delayed notice of __ days (give exact ending date if more _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

TFO Freddie F. Alaniz, DEA
*Printed name and title*

i

Sworn to before me and signed in my presence.

Date: 10/23/2018

City and state: Tulsa, OK

_____
*Judge's signature*

U.S. Magistrate Judge Frank H. McCarthy
*Printed name and title*

## UNITED STATES OF AMERICA
## FOR THE NORTHERN DISTRICT OF OKLAHOMA
## AFFIDAVIT FOR SEARCH WARRANT

1. Affiant, Freddie F. Alaniz, Task Force Officer, U.S. Department of Justice, Drug Enforcement Administration, Police Officer, Tulsa County Sheriff Office being duly sworn under oath, states as follows:

2. I, Freddie F. Alaniz, am an investigative or law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

3. I am currently employed as a Deputy Sheriff for the Tulsa County Sheriff's Office (TCSO) and have been so employed for over 3 years, with over 8 years as a commissioned Peace Officer experience. In July 2016, I was assigned to the United States Drug Enforcement Administration (DEA) as a Task Force Officer (TFO). As a TFO, I work on drug cases both nationally and internationally, but I primarily investigate cases in the Northern District of Oklahoma. I have received formal training in narcotics investigations by the Missouri Southern State University Police Academy, Oklahoma Council on Law Enforcement Education and Training, as well as informal training by seasoned narcotics investigators. I have also received narcotics investigations training from the DEA. I have participated in wire and physical surveillance, surveillance of undercover transactions, the execution of search warrants, debriefings of informants, and reviews of taped conversations and drug records. The following information is based upon affiant's personal knowledge and investigation in this case, as well as information made known to affiant by other Agents and law enforcement officers in Northern Texas.

4.      The following affidavit is a synopsis of the investigation and does not include all facts and statements from witnesses and events which occurred in this investigation. The following sets forth in chronological order the sequence of events that lead to the arrest of multiple individuals in association of this case. This sequence of events is not verbatim, but based upon the below information your affiant believes sufficient probable cause exists for the search of the devices listed in Attachment "A".

5.      On October 10, 2018, at approximately 1:45 p.m., Texas State Trooper Casey Dawson stopped a white Toyota Matrix, bearing Arizona license plate CBW8647, for speeding on Interstate 40 near Amarillo, Texas. The driver was identified as Adrian TORRES-MORAN of Arizona. The subject was en-route from Fontana, California to Tulsa, Oklahoma. Trooper Dawson smelled an odor of marijuana and conducted a probable cause search of the Toyota. Trooper Dawson located 2 bundles of cocaine, weighing approximately two kilograms, in a voided compartment inside of the Toyota. A field test was positive for cocaine. TORRES-MORAN stated post-*Miranda* that he was transporting the drugs to Oklahoma at the direction of a Hispanic male subject known to TORRES-MORAN as "Cholo Loco". TORRES-MORAN was to get paid $7000 upon successfully delivery of the cocaine. During the investigation, investigators learned that TORRES-MORAN was to contact "Junior" at phone number 405-438-9274 for further delivery instructions. When TORRES-MORAN contacted "Junior" at phone number 405-438-9274, "Junior" provided an address in Tulsa, Oklahoma, where TORRES-MORAN was to meet "Junior" to deliver the cocaine. A controlled delivery was conducted by members of the DEA-Amarillo and DEA-Oklahoma City. During the controlled delivery, TORRES-MORAN placed recorded telephone calls to members of the drug trafficking organization in Mexico and Tulsa, Oklahoma for further instructions about delivering the cocaine. TORRES-MORAN was instructed by

2

"Junior" to meet at the Super 8 motel, 3211 S. 79th East Ave. Tulsa, Oklahoma, which is in the Northern District of Oklahoma.

6. On October 11, 2018 at approximately 12:27 a.m., TORRES-MORAN arrived at the Super 8 motel in the Toyota Matrix. TORRES-MORAN placed calls to "Junior" advising "Junior" that he, TORRES-MORAN, was at the Super 8 waiting for him. One package of cocaine, weighing approximately 1 kilogram, was left in the Toyota as a representative sample of the original 2 kilograms.

7. At approximately 12:45 a.m., a Ford F-150 arrived to the Super 8 motel, 3211 S. 79th East Ave., in Tulsa, Oklahoma. The Ford was driven by Gumaro IBARRA, the front seat passenger was Jesus Adelio ANGULO-LOPEZ. ANGULO-LOPEZ exited the Ford and made contact with TORRES-MORAN. ANGULO-LOPEZ handed TORRES-MORAN $2,000, at which time TORRES-MORAN handed ANGULO-LOPEZ a bag containing the 1 kilogram package of cocaine. ANGULO-LOPEZ took possession of the bag, returned to the Ford truck, and got into the front passenger side of the vehicle. Members of Tulsa DEA office then approached the vehicle and placed all three subjects into custody. During the arrest of IBARRA, investigators collected a black in color iPhone, S/N: F17VF8RNJCLY, secured in a UAG phone case from IBARRA's person. A silver in color Samsung cell phone, model SM-J327T1, FCC ID: A3LSMJ327T, IMEI: 354256/09/894643/7 and a green HTC Cricket cell phone, Model ZPYR200, SKU: DHTK4106 was removed from ANGULO-LOPEZ person. A Black in color iPhone, model A1778 S/N: F4JSK4TEHG7K, was collected from TORRES-MORAN's person. Investigators also collected a Blackberry Curve 9320 cell phone, IMEI:358456055942173 inside of the Ford F-150 during a search.

8.     All subjects were transported to the DEA resident office for interviews. TFO Freddie Alaniz read ANGULO-LOPEZ his *Miranda* rights, and ANGULO-LOPEZ waived those rights and agreed to speak with law enforcement. ANGULO-LOPEZ stated that IBARRA had been on the phone negotiating the pick-up and once they arrived, IBARRA had handed him the money and asked him to give the money to TORRES-MORAN for the package. ANGULO-LOPEZ also relayed that he knew they were headed to pick-up drugs, but was unsure of how much or which kind of drugs.

9.     TFO Alaniz took possession of all cell phones after their arrests and transferred custody of the two cell phones to TFO Lamborn for evidence processing.

10.    The Affiant anticipates these items listed in Attachment "A" will assist in the furtherance of their investigation into the aforementioned Drug Trafficking Organization involving TORRES-MORAN, IBARRA, ANGULO-LOPEZ, "Cholo Loco" and others not yet identified. The Affiant anticipates utilizing the information obtained from the cellular telephones to identify other co-conspirators known and unknown and to corroborate investigative information obtained throughout this investigation.

11.    The Affiant knows that it is very common for drug traffickers to purchase and use multiple cellular telephones, often referred to as "throw away phones". The Affiant knows that these "throw away phones" are often cheap prepaid cellular telephones that can be purchased at many retail outlets. These phones allow the purchaser/user to avoid providing accurate personal information. Drug traffickers often utilize these phones in an attempt to avoid detection by law enforcement as they are hard to identify or trace the true owner of the device.

12.    The Affiant knows that cellular telephones are often equipped with digital cameras and those phones possess the capability to transmit and/or store electronic images. The Affiant

knows that in many cases, drug traffickers may maintain photographs of illegal drugs, large quantities of U.S. Currency, or other people involved in their narcotics trafficking business. These photos are sometimes stored on their cellular phones, and often are transmitted or sent from one electronic media device to another. The Affiant also knows that cellular phones may also contain notes regarding drug trafficking or money laundering that are recorded by the subject who possesses the phones. Furthermore, the affiant knows that text messages and emails are often used by two or more persons to communicate information regarding narcotics trafficking, and other illegal activities, between phones.

13. Your Affiant has reason to believe that the items listed in Attachment "A" may have been used to facilitate the distribution of cocaine by Gumaro IBARRA, Jesus Adelio ANGULO-LOPEZ, Adrian TORRES-MORAN, "Cholo Loco", and others not yet identified.

14. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

15. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession. The execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

16. Based on the foregoing, the affiant has probable cause to believe that title 21 section 846 of the United States Code and title 21 section 841(b)(1)(B)(ii)(II) of the United States Code were violated by a "Cholo Loco", Gumaro IBARRA, Jesus Adelio ANGULO-LOPEZ, and Adrian

TORRES-MORAN. Your affiant believes evidence is contained within the long term memory and data of the telephones described in Attachment "A" regarding the drug trafficking activities of Gumaro IBARRA, Jesus Adelio ANGULO-LOPEZ, Adrian TORRES-MORAN, "Cholo Loco" and others not yet identified. Specifically, the affiant has probable cause to believe the names and phone numbers of drug suppliers and customers, electronic notes pertaining to prices and amounts of drugs sold, addresses of individuals involved in the distribution network, addresses of stash houses, addresses of locations where narcotics were picked up, and photographs of the narcotics will be found on the devices listed in Attachment "A". These items are more fully set forth in Attachment "B".

Freddie F. Alaniz
Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me this __23rd__ day of October, 2018.

Frank H. McCarthy
United States Magistrate Judge

## ATTACHMENT "A"

1. iPhone, S/N: F17VF8RNJCLY

2. Samsung cell phone, model SM-J327T1, FCC ID: A3LSMJ327T, IMEI: 354256/09/894643/7

3. HTC Cricket cell phone, Model ZPYR200, SKU: DHTK4106

4. iPhone, model A1778 S/N: F4JSK4TEHG7K

5. Blackberry Curve 9320 cell phone, IMEI:358456055942173

## ATTACHMENT "B"

1. All records on the devices described in Attachment "A" that relate to violations of 18 U.S.C. §§ 846 and 841(b)(1)(B)(ii)(II) and involve "Cholo Loco", Gumaro IBARRA, Jesus Adelio ANGULO-LOPEZ, and Adrian TORRES-MORAN, including:
   a. Lists of customers and related identifying information;
   b. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;
   c. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);
   d. Any information recording individuals listed within paragraphs 5-16 of the affidavit for search warrant or any recordings of those found to be associated with the criminal activity involving the said individuals;
   e. All bank records, checks, credit card bills, account information, and other financial records.
2. Evidence of user attribution showing who used or owned the devices listed in Attachment "A" at the time things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and password, documents, and browsing history;
3. Records evidencing the use of the internet to further or facilitate drug trafficking activities such as browser history, "bookmarked" or "favorite" web pages, search terms entered into any internet search engine, travel or mapping websites or search terms, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.